Number 17, the reading glasses need to come out, number 17-6212. Counsel? May it please the Court, Terry McHugh for Roger Blanco Appellant. This case twists and turns around whether the conduct in our lawsuit turned on a service provided by FedEx. We, of course, argue that it's not a service, and the other side in the district court found that it was. So we're talking about deregulation and preemption under the ADA. The facts we complain of is after the coins, in this case the gold coins, were stolen from a FedEx facility, the contract of cures between the parties ended at that point. Then when FedEx offered to take the lead in the law enforcement investigation and report its investigation to law enforcement and didn't fail to do so, that's where our complaint picks up. And we feel like that that is not an ADA claim or a federal common law claim, that it's a state law claim based on negligence. So your position is that the investigation of stolen goods is different from the investigation for lost goods. Am I right so far? You draw a distinction between those two things? You're right in the context. I think if – and I think the briefs kind of set this out. We argue kind of a dominion and control. Even though goods could be stolen and still within the property or a facility of FedEx, and if they were investigating stolen goods that might be in an employee's locker or somewhere on its premises or that of one of its agents, then there could be an internal investigation that would relate to that service. The contract of cures would still be in effect, in my view. So your position is once the gold left the facility, that that's what separates it from a service arising from the transportation? Yes, Your Honor. It is our – and we cited, and I know FedEx chided us a little bit on our case that was under the Warsaw Convention, which has a clear definition of when a contract of carriage ends. And it's basically a point-to-point, from point A to point B. And in this case, point A was a FedEx facility in Washington State, and it was to be delivered to a metals exchange in Oklahoma City. And then when it got to the sorting facility in Oklahoma City, then it was stolen and removed from their property, FedEx's property. And this FedEx knew and said as much, basically, to the policeman that filed its initial police report. So in that – Counsel, at that point, would you agree that it became a police matter instead of a FedEx matter? With nuance, just a little bit of nuance. But I do agree principally. It became a police matter because Title I still belonged to Mr. Blanco, and Mr. Blanco had a right to recover that property. Two, FedEx, I think, is entitled to do internal investigations for its own purposes, whether that's to remove employees who would steal or have stolen. And they would have their own purposes, but it would be parallel to the law enforcement investigation. And that's what we complain of, that they went and filed their police report. Our client filed a police report, and then the FedEx told the police department they came to a decision, which was in the record between them, and there's a dispute about that, that FedEx would take the lead and then report back to the Oklahoma City Police Department, and it never did. And then when questioned in deposition, the security officer said, well, I was waiting for the Oklahoma City Police Department to come to me. And then so there's – it did become a police matter, and FedEx could have investigated on their own for their own purposes that would have been an internal matter. But when they interceded with the police and offered to take steps and report that to the police, then I think they undertook voluntarily to do that. You've got me to the point where I can ask the question I'm really interested in, and that is, once it was a police situation, even if they deferred to Mr. Brooks doing some investigation, if there's fault here, why doesn't it just lie with the police? I mean, they made the decision to defer and not do the investigation, but it was their responsibility, wasn't it? It was, and again, I think that you get into issues, at least from our perspective, as a potential claimant. You get into issues of sovereign immunity. And under the Government Poor Claims Act for the State of Oklahoma, there's the issue of whether that was a – they elected on how to use their resources. And our point is there was testimony by the officer that at a certain threshold, which we met, certainly $70,000 or $75,000, that it moved to the top of their priority list. But I don't know – there was testimony that had worked before with FedEx on investigation of matters, so there was some kind of a relationship. And I don't think – again, FedEx is voluntarily electing to say, hey, we'll investigate. Please don't step on our toes. However that conversation went, and the police department agreeing to it, I think put them in the face of – or undertaken a duty which was to my client. And your position is once they voluntarily undertook that duty, they had to do it non-negligently? Right, Your Honor. That's the whole basis of our negligence claim as far as the investigation goes. And the discovery – and again, this gets really into the facts – but the investigation showed that they had information that proved useful to the Secret Service when it became involved. Because within three days of the Secret Service knocking on FedEx's door, they had resolved the case and recovered most – not most, but about a third of the coins or money from the coins. So again, our position is that had an orderly law enforcement investigation been allowed to proceed in the first instance, we would have – we possibly could have recovered a lot more than what we did. Are you still claiming that they – that FedEx is liable for conversion because it ratified the actions of Mr. Digby? Is that correct? I say Digby. The – I think – again, I think that's for a finer fact to determine. We alleged it simply because the – we hired a private investigator early on in June. The theft occurred in May. And the investigator talked with Mr. Brooks and toured the facility. And Mr. Brooks at that time indicated that he had persons of interest, that he had information that he was going to turn over to the Oklahoma City Police Department. And then the – during the period, the months between June and August, Mr. Digby was allowed to disperse with the gold and recover some cash and spread it out among his peers. He – apparently in doing so, I think it's in the record, there were some – he used FedEx to ship the gold. And in the point, all of the persons involved with either helping him disperse the gold, there were two other – it could have been more, but two other employees who also helped him either recover money. But let me – let me interrupt. Okay. Under Oklahoma law, doesn't Federal Express have to have in some way accepted the benefits of the wrongful acts of Mr. Digby to be – to have ratified that conversion? Yes, Your Honor. And what did they do? How did FedEx accept the benefits of the theft of the gold coins? Well, one of the points I was trying to make at the very end there was that these folks involved were still employed. And so in some sense, if FedEx is continuing to argue that they had the rights or this is somehow related to the curage of contract, then they're – and by not disappointing or suspending or, you know, I can understand that you might not terminate until you have greater proof, but it doesn't look like, you know, from our vantage point that if we had never had the Secret Service involved, they may still be working there. And what's the benefit that they – that they had the benefit of that Mr. Digby services as an employee? That's the benefit that you're relying on? Mr. Digby and maybe a few others. Okay. And the – I hadn't really thought that far in advance because we didn't get that far. But the – but I feel like that there's some ratification on their part by the continued employment and the acceptance of those services and the retention of the employees. If there are no further questions, I'll reserve my time. I've got a question. Why isn't your claim – why aren't your claims kind of barred by the contract? Again, because we say that this is unrelated to the contract, not part of the curage of contract, that these claims fell within the state law claim, which was a two-year statute that were timely filed. It's kind of the chicken and the egg, and it's the – it started with our – on our motion to remand, but the – you have to determine whether it's a service, whether that conduct after it left the building is related to a service to determine whether it's related to that contract of courage, which is the time bar. Doesn't the contract of courage or the service document refer to misdelivery, non-delivery? The only – to that point, and I did a search for stolen or missing, and the only – the only thing that I could find that relates is that the point of the theft or when it left the process, the only thing in the contract, the only duties, was that Mr. Blanco wanted to file a claim for the limits, and the duty for FedEx at that point would have been to process the claim. So those were the only two contractual duties left at that point, and that's the only thing that I can find in their – the incorporation of their service contract. Well, doesn't – oh, sorry. Just doesn't it say that the maximum amount is – it's limited if this – if any of these things happen? And isn't non-delivery what happened here? Well, you can call it non-delivery, but you can also call it theft. And the – and, again, if – just say – follow my hypothetical earlier where they had followed their own internal investigation for their own purposes and had nothing to do with the police investigation and getting involved with that, and then this would be a different case because there was no voluntary undertaking on their part. It's not – our claim is not based on the contract. Okay. So the contract just is – we should just follow tort principles? Yes, that's been our position from the beginning. So this is purely a causation? Where was the break in the causation? Right. Okay. And, again, the facts and the records show that over this time, from the time that the loss was reported, even through June, and through the Secret Service, the affidavit of the Secret Service agent, that Mr. Digby was allowed to disperse with his gold and receive money between him and his friends. So there were damages that we sustained from that inability to recover as much of the property as we could. So it's not the same damages as for the loss, to answer your point. Thank you. Counsel, I noticed that your claims against Mr. Digby were dismissed without prejudice. Does that create a jurisdictional issue for us? Do we have a final order here for jurisdiction? I'm not exactly prepared to argue that today. I would say that, based on the conversation I was having earlier between the court and another party, the one thing that I'll say is a little bit different here is that we, I don't know that the court ever had jurisdiction over Mr. Digby in the first instance. I don't know if that's an issue as it relates to a 48-1 dismissal or not. He filed something that was treated as an answer, right? Well, he did at the state court. And when, in our investigation, we were going to move for default judgment, and we discovered that on the very same day of removal, he filed that answer in the state court. It's not clear that it was not part of the removal record. And so it's not clear, the state court records aren't time-stamped when they come in, so you don't know they were just filed on that same day. And so, and then in the removal notice, it didn't appear that Mr. Digby was ever served with the notice of removal. And so I'm not, I haven't had the opportunity to research the interplay between whether the federal court ever had jurisdiction over him. If the federal court did, do we have a problem with finality? Based on the conversation I heard earlier, we might. I would like the opportunity to answer that after the chance to research it. Thank you, counsel. May it please the court, my name is Tom Murray. I represent Federal Express in this matter. The Tenth Circuit should affirm the district court's opinion. District court's opinion was based on law, common sense, and a public policy issue. Counsel, I might as well get this right off the top. Do we have jurisdiction or not? I believe you do, yes, sir. Why? This is a federal common law issue. Was there a final order in district court in light of the fact that one of the parties was dismissed without prejudice? Your Honor, I did not even research that. I did not even consider that matter. I don't know. I would leave it up to the court's wisdom and discretion. Thank you. There are two issues in this case that are raised by the appellate. The first is, does federal common law apply once a shipment loses or is lost from the control of the carrier? In the alternative, if he gets over that hurdle, he's got to get over the ADA hurdle of whether the Airline Deregulation Act preempts his negligence claim. The district court found that the appellate did not get over the first hurdle, which is, federal common law applies in this case. The district court, in its remand decision and in its summary judgment decision, held that federal common law applies to lost and stolen shipments. Now, stolen shipments are not treated any differently from lost shipments. In her opinion on remand, she cited those opinions and referred back to it in her summary judgment decision. Stolen shipments are treated absolutely the same, and she gives you cases in her opinion. Jim Nett v. Federal Express was one of mine, which directly says, stolen shipments are treated the same as lost shipments. Barry v. Delta Airlines is another case she cited. There's all sorts of cases. In fact, there are no cases where a federal court has ever held that a stolen shipment is treated different from just a lost shipment for the purposes of federal common law. Now, what's happening here is the appellant is trying to evade federal common law by dressing his claim up against an air carrier as a tort claim. The Second Circuit in Nippon Fire and Insurance v. Skyway Freight said you can't do that. You can't disguise a claim against a carrier as a tort claim and evade federal common law. Why is federal common law important? Federal common law states that the contract of carriage governs the shipping. In this case, you have the contract of carriage, which is the air bill, and the service guide, which is incorporated by reference. That's standard federal common law. The service guide has a terms and conditions section, and that states that you have one year to file a lawsuit from the time of the loss, the date of delivery, or the date the package should have been delivered. But it's for any cause of action arising from the transportation of any package, right? Correct. And that includes lost or stolen. And their argument is that there comes an end to what is arising from the transportation. And for them, that break in, I guess, causation, whatever you want to call it, would be when it goes from the point of an internal investigation for a loss or misdelivered package to a police action because you've reported a stolen package. And at that point, it's no longer arising from the transportation. I know that's their position, and it's just incorrect. It's just an incorrect position. Stolen shipments are treated the same as lost shipments. Looking for a package as part of the service... This is still under federal common law or under the contract? Well, the contract of carriage is under federal common law. I understand. But we have to look at the language of the contract. And does the language of the contract cover the situation where FedEx has gone, has told the police, we think this is stolen? Is that still part of the service provided under the contract? It is part of the service. When you look at what the definition of service is, you can look at the Hodges case, and there's others that say it's bargained for or anticipated. And certainly looking for a lost package is anticipated. I think all our customers anticipate... Again, I want to make sure we're looking for a lost package. Is there a difference between a lost package and a stolen package? No, Your Honor, there's not. The case law makes clear you treat lost packages the same as stolen packages. There's no difference. In fact, when this case started, when Mr. Brooks first got on the case, he didn't know if it was lost or stolen. What happens a lot of times is the shipping labels get torn off of packages. And they get misdirected, rerouted to the wrong place. You don't know. And it'd be a lot of packages are never found. So, you know, why would you have a difference between how you treat stolen packages or lost packages? It would create a huge problem, and it's really just a bad idea for the transportation industry. Is there any break to how far these, quote, services go? If FedEx decided that maybe Mr. Blanco was pulling some kind of a scam and that maybe he had the gold and sent Mr. Brooks to break into his home in Florida, search for it, and then they get sued for trespass, did that suit have to be brought within one year because it's related to the transportation of the goods? Or is there some point at which we're beyond that related to language? Judge McHugh, I would submit that breaking and entering someone's house is not part of a service that we provide. Our service is delivery of packages. And when the package can't be found, we look for it. That's just part of the service we provide. But, no, we don't, as far as when the cutoff is, I would say that the one-year mark, you could argue, is a cough. But it could, as long as the package is still in play, I guess, you could argue the service is still continuing. Because what could happen is the package could, it could be tucked under a conveyor belt somehow by accident. And two years later, someone looks down and sees the package and says, hey, look what I found. We also have Castaway, where Tom Cruise delivered that FedEx package after he'd been on an island for eight years. I would submit that until we deliver the package, the service continues. And while it's still in this case, the package had not been delivered. We were looking for it. And you can call it an investigation, but it's just part of the service. We were searching for the package, trying to find out what happened. Could you relate what you've just been saying to your time bar argument? Yes, Your Honor. Because federal common law controls, meaning the contract of carriage controls, governs the shipment, the one-year statute of limitations found in the contract is valid and was enforced by the court. So, the appellant hasn't argued the validity of that statute of limitations clause in the contract of carriage. He's just saying that the contract of carriage and federal common law should just be thrown out the window once the package leaves our possession. And if you think about it, federal common law applies to lost and damaged packages. The definition of loss is it's no longer our constructed possession. It's gone. So, it doesn't really make any sense to draw a line and say, well, once it's out of your possession, then federal common law, the ADA, the contract of carriage, they should all be thrown out. It just doesn't make any sense. And the district court did not think that it made any sense either. Do you want to say something about your preemption argument? If the appellant can get past the federal common law issue, he still has a second hurdle, and that is the Airline Deregulation Act preempts any state laws that have a force of effect affecting prices, routes, or services of an air carrier. In this case, the negligence investigation claim certainly would affect our services. What about the conversion claim? Well, the conversion claim is interesting. I think Judge Ide brought up Oklahoma law. The conversion doctrine is federal common law. It's old established federal common law. And the judge, in our motion for summary judgment, we said that's not preempted. You can go forward with a conversion claim, but under federal common law, it has to be a true conversion. It's kind of what one of the judges up here quoted about Oklahoma law. But it has to be a true conversion, meaning that the appellant cannot escape the bounds of the limitation liability, which was $1,000 in this case, unless FedEx converts the property to its own corporate use. So if FedEx had taken the gold, sold it, and bought a new truck, that would be a corporate conversion, a true conversion. But a true conversion did not take place in this case. It was not alleged in the complaint. There's no evidence to support it, so that's why the judge dismissed it. The conversion claim, under federal common law, has to be a true conversion. Otherwise, it's dismissed. Going back to the negligence claim, one of the arguments that I think the plaintiff is making to get around the preemption is just like a contract where people voluntarily agree to certain things where, for example, frequent flyer miles, where the court has said it's not preempted. I think the argument is here, this was voluntary on the part of Federal Express to continue an investigation rather than turning it over to the police. And once they voluntarily agreed to conduct the investigation, they had to do it non-negligently. And, therefore, that is not preempted because it was a voluntary undertaking. Well, I would disagree with that. As long as it's a service, I disagree with their position. I understand what their position is, but I just disagree with it. As long as it's a service or affects a service, it's preempted. And you've got to understand that looking, this is called an investigation that we voluntarily undertook. And that's just the wrong characterization of what happened. A package was missing. A high-value package was missing. We have a responsibility and duty to try to find out what happened to it. I mean, it's bad for customer relations for high-value packages to go missing. So we try to search for that package and see where it is. In this case, it led to finding out that an employee stole it. I would note that if it wasn't for Carrie Brooks' investigation, Secret Service wouldn't have had anything. At least not as soon as it did. From the time the package was stolen to the time there was a confession by Justin Digby, I think it took 80 days, which is not very long. But Carrie Brooks figured out who did it. The problem was that Justin Digby was just a lot scarier of a Secret Service badge than he was of a FedEx security badge and just never would confess. But as far as a voluntary undertaking, it's not a voluntary undertaking. It's a service that we provide. It's anticipated by our customers that we are going to look for a package, whether it's lost, mislabeled and sent to a wrong location, or it's stolen. So I just disagree with their characterization that this was a voluntary undertaking. It was a continuation of the service. We were tendered a package in Redmond, Washington. We were delivering it to Oklahoma City. It got to Oklahoma City and disappeared. What we were doing is continuing the delivery service by trying to find that package so we could deliver it. That's how you have to look at this. What's the best language in the contract itself to support your definition of the scope of service? In other words, you're saying, well, if we lose the package, we have a responsibility to go find it. That seems to make sense. But then you say, but even if it's stolen, we still have an obligation. But where in the contract does it say that? I don't think that it's – I can't think off the top of my head of a specific location where – I know it doesn't say anywhere that if a package is stolen, we will continue working for it. But again, under the – Wouldn't it make sense to have that in the contract? Well, we may have to amend the terms and conditions, Your Honor. But I think that it goes back to what is a service under the Interpretation of the Airline Deregulation Act, and that is bargain for or anticipated services. And this is certainly an anticipated service that we will look for your package when it's lost. We have an overgoods department. We have a huge warehouse where overgoods go, where we try to locate the owner with the package. It's just all part of the big service that FedEx provides. I've got 45 seconds, so just finishing up, I'd like to say, federal common law has been adopted by all the circuits except maybe the 10th and maybe not the 11th. But this would go a long way to establishing national uniformity. To say if the appellant's position were adopted, that would mean that in the 10th Circuit, federal common law would only apply to damaged packages, not to lost packages anymore. And that would ruin the national uniformity that is the intention of Congress and a huge policy issue under the Airline Deregulation Act. Thank you. Thank you, Counsel. Thanks to both Counsel. Does he have more time? I think you've exhausted your time, Counsel. 13 seconds. 13. If I can just make two comments. One is as it relates to anticipated. Counsel, I don't think you had time, but just one sentence and we'll let you. I don't have time. As long as you're up there, go ahead. One sentence. I don't think that Warren and shippers anticipate that their goods are going to be stolen. And I don't think the contract would read that way if they made that anticipation. Two, I don't think that anybody anticipated that once a package was stolen or expected, that FedEx would go around the country trying to find it. Okay. Thank you, Counsel. We understand your argument and the case will be submitted.